IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MARSHALL COUNTY COAL RESOURCES, INC.,**
**Employer Below, Petitioner**

FILED
**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-395**          (JCN: 2023015425)

**DAN SHULER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Marshall County Coal Resources, Inc. ("MCCR") appeals the September 12, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Dan Shuler timely filed a response.[1] MCCR did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and approving the request for an occipital nerve stimulator ("ONS").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Shuler, a miner-bolter, completed an Employees' and Physicians' Report of Occupational Injury or Disease form dated February 21, 2023. Mr. Shuler indicated that he was injured at work on February 11, 2023, when a rock fell from above and hit his neck, spine, and head. Medical personnel from Ruby Memorial Hospital completed the physicians' portion of the form on February 26, 2023, and indicated that Mr. Shuler had a crush injury as a direct result of an occupational injury. The body parts injured were listed as the cervical, thoracic, and lumbar areas of the spine.

By order dated February 28, 2023, the claim administrator held the claim compensable for unspecified injury of the head and strain of muscle, fascia, and tendon at the neck level.

On March 27, 2023, Mr. Shuler was seen by Emily Courtwright, PA-C, at WVU Hospitals Orthopedic Spine Center for a follow-up regarding his cervical strain. Mr. Shuler

---

[1] MCCR is represented by Aimee M. Stern, Esq. Mr. Shuler is represented by Edwin H. Pancake, Esq.

reported that he was working in the mines when a large rock fell on his head and that after the injury he felt numbness throughout his body. PA-C Courtwright assessed cervical neck strain and recommended that Mr. Shuler begin physical therapy.

Mr. Shuler underwent an x-ray of the cervical spine on May 8, 2023, ordered by PA-C Courtwright. The impression was degenerative disc changes at C5-C6 and C6-C7. There was straightening of the cervical lordosis, and there was no fracture, spondylolisthesis, or intersegmental hypermobility.

Jack E. Riggs, M.D., performed an electromyogram ("EMG") on August 9, 2023, for the indications of radiculopathy affecting the left upper extremity, neck, and left lower extremity. The study demonstrated left carpal tunnel syndrome, but there was no definite evidence of generalized peripheral neuropathy or left lumbosacral radiculopathy.

Prasadarao Mukkamala, M.D., examined Mr. Shuler and issued a report dated September 13, 2023. Mr. Shuler reported pain in the low back with radiation to the left lower extremity, pain in the neck with radiation to both shoulders, numbness in the left hand with relation to digits 3, 4, and 5, weakness in the left upper extremity, headaches, and poor balance. Mr. Shuler denied any prior injuries to the neck or back. Dr. Mukkamala diagnosed a head injury and cervical strain. Further, Dr. Mukkamala opined that Mr. Shuler had not reached maximum medical improvement ("MMI") for the compensable injury and recommended physical therapy for an additional twelve weeks.

On October 2, 2023, Mr. Shuler underwent an MRI of the cervical spine. The impression was moderate multilevel degenerative changes, most significant at C5-C6 and C6-C7. On October 10, 2023, Michael Ebbert, D.O., at WVU Medicine Sports Neurology saw Mr. Shuler. Dr. Ebbert performed a bilateral occipital trigger point injection with steroids and nerve block. Dr. Ebbert noted that the procedure was well tolerated.

Mr. Shuler was seen by Emilie Kramer, M.D., at WVU Department of Orthopaedics on October 31, 2023, for a follow-up regarding his significant neck and low back pain. Dr. Kramer recommended that Mr. Shuler continue with physical therapy for musculoskeletal rehabilitation.

Mr. Shuler was seen by Dr. Ebbert on November 14, 2023, for an evaluation of cranio-cervical trauma. Dr. Ebbert assessed cervicogenic headache, whiplash injury to neck, concussion without loss of consciousness, cervical paraspinal muscle spasm, occipital neuritis, and neck pain. Dr. Ebbert noted that Mr. Shuler's condition was about the same, but that he had excellent benefits from the injections, and indicated that he would try a final round of bilateral suboccipital trigger point injections with nerve block.

On December 14, 2023, Dr. Mukkamala performed a second evaluation of Mr. Shuler, who reported pain in the back of the head and low back. He diagnosed head injury and cervical strain. Dr. Mukkamala opined that Mr. Shuler had not reached MMI for the compensable injury. Dr. Mukkamala recommended an additional eight weeks of physical therapy. He recommended a more aggressive physical therapy course, similar to work conditioning, to help Mr. Shuler return to work by the end of the eight weeks.

On January 30, 2024, Jonathan Pratt, M.D., performed an occipital nerve radiofrequency ablation for the pre-procedure diagnosis of occupational neuralgia. On February 2, 2024, Mr. Shuler underwent a lumbar spine MRI, which revealed no evidence of high-grade spinal canal or foraminal stenosis and multi-level degenerative changes resulting in mild foraminal stenosis.

Dr. Mukkamala evaluated Mr. Shuler for a third time and issued a report dated March 8, 2024. Mr. Shuler reported pain over the head in the parietal region of the scalp, low back pain, and tingling and numbness in both feet. Dr. Mukkamala diagnosed head injury and cervical strain. He opined that Mr. Shuler had reached MMI and indicated that he would not require any further treatment. Dr. Mukkamala noted that Dr. Ebbert had performed interventional procedures but stated that there was no indication for any additional interventional procedures. However, Dr. Mukkamala recommended work conditioning for four hours per day, five days a week, for three weeks, to prepare Mr. Shuler to return to work.

On September 30, 2024, Mr. Shuler was seen by Manish Ranjan, M.D, at the WVU Department of Neurosurgery for follow-up after completion of a neuropsychological evaluation for possible ONS. Mr. Shuler reported pain in the back of his head radiating to his forehead. Dr. Ranjan assessed cervicogenic headache, occipital neuritis, posttraumatic headache, neck pain, and cervical radiculopathy at C7. Mr. Shuler followed up with Dr. Ranjan regarding the risks and benefits of ONS on October 3, 2024. Mr. Shuler indicated that he wanted to proceed with ONS and signed a surgical consent for an ONS trial.

By order dated October 29, 2024, the claim administrator denied the request from Dr. Ranjan for authorization for an occipital nerve stimulator for cervicogenic headaches. The claim administrator indicated that cervicogenic headaches are not a compensable diagnosis in the claim. Mr. Shuler protested this order to the Board.

On November 7, 2024, Mr. Shuler was seen by Dr. Ebbert at WVU Rockefeller Neuroscience Institute. Dr. Ebbert noted that the first round of injections improved symptoms, specifically headaches, for around four days before they began to return. Mr. Shuler reported ongoing issues with his low back and tingling in his legs. Dr. Ebbert noted that Mr. Shuler was recently seen by a neurosurgeon, who offered nerve block and ONS for chronic neck pain and headaches, but this treatment was denied by the claim

3

administrator. Mr. Shuler reported regular headaches and stated that he continued to perform physical therapy exercises at home three times per week.

Mr. Shuler was deposed on April 15, 2025, and he testified that on the date of the injury, a rock fell, hit him on the top of his head, and drove him to the ground. He indicated that he tried to get back up, but his legs from the waist down kept going numb. Mr. Shuler missed twenty-two months of work due to the injury. The injuries approved in the claim were unspecified head injury and injury to the neck and back. Mr. Shuler stated that he was still experiencing head pain, which goes from the top of his head up to the front of his head, and lasts from three to five minutes. Further, Mr. Shuler reported that over time, the pain levels in his head had remained about the same. Mr. Shuler testified that due to continued headaches, he was willing to undergo the trial of the ONS to determine if it helped to eliminate the pain. Mr. Shuler indicated that he did not have any new injuries affecting his head or neck following the compensable injury.

By order dated September 12, 2025, the Board reversed the claim administrator's order and approved the request for an ONS. The Board found that Mr. Shuler established that an ONS trial is reasonable and necessary treatment for the compensable condition of unspecified head injury. It is from this order that MCCR now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, MCCR argues that the Board's decision is clearly wrong because the requested ONS would be used for occipital headaches, which are not a compensable

condition in the claim. Further, MCCR asserts that Mr. Shuler's symptoms, including his headaches, were continuing to improve without the ONS. Finally, MCCR avers that Dr. Mukkamala found on March 8, 2024, that Mr. Shuler's compensable injury had reached MMI and required no further treatment. We disagree.

The claim administrator must provide medically necessary and reasonably required medical treatment, healthcare, or healthcare goods and services. *See* W. Va. Code § 23-4-3 (2005) and W. Va. Code R. § 85-20-9 (2006). Here, the Board found that the evidence of record supports a finding that the requested ONS is a reasonable and necessary treatment of the compensable condition of unspecified head injury. The record establishes that Mr. Shuler continued to have head pain and headaches related to the February 12, 2023, injury. Dr. Ranjan, the neurosurgeon, requested the ONS in order to determine if the device would help alleviate Mr. Shuler's head pain and headaches.[2] Further, the Board noted that Dr. Ebbert, the treating neurologist, stated on November 7, 2024, that Mr. Shuler's symptoms were the result of a kinetic force injury with resultant cranio-cervical trauma, and he also recommended the evaluation with neurosurgery for a possible ONS. As noted by the Board, the only medical evidence of record that addresses the request for the ONS or ONS trial is from Dr. Ebbert and Dr. Ranjan, both of whom support the request.

We also note that the claim is compensable for an unspecified head injury, and it is reasonable to conclude that headaches result from head trauma. Further, Dr. Mukkamala may have stated that the claimant needed no further treatment, but this opinion is not entirely credible because he recommended further treatment in the form of work conditioning. Additionally, Dr. Ebbert and Dr. Ranjan disagreed with Dr. Mukkamala's opinion.

Upon review, we conclude that the Board was not clearly wrong in finding that ONS is a reasonable and necessary treatment for the unspecified head injury. As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and approving an ONS trial.

Accordingly, we affirm the Board's September 12, 2025, order.

Affirmed.

---

[2] We note that the Board's order refers to Dr. Ranjan as Dr. Manish.

5

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White